UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| SIMONE JACKSON, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 14-2074 (TSC) |
| GALLAUDET UNIVERSITY, | ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Gallaudet University's Rule 12(b)(6) Motion for Partial Dismissal of Plaintiff's Amended Complaint [ECF No. 17]. For the reasons discussed below, Court will grant the motion in part and deny the motion in part.

### I. BACKGROUND

"Plaintiff is completely deaf and of Jamaican national origin." First Am. Compl. for Employment Discrimination and Retaliation [ECF No. 14] ("Am. Compl.") ¶ 4. "She communicates using both American Sign Language ('ASL') and Jamaican Sign Language ('JSL')." *Id*.

From 2005 until her termination effective September 23, 2009, *see id*. ¶ 17, plaintiff was "employed as a school bus monitor for Gallaudet University's Department of Transportation . . . serving Kendall Demonstration Elementary and Model Secondary

1

Schools for the Deaf," *id.* ¶ 1.  She "[sat] on schools buses and assist[ed] special needs kindergarten age children in getting on and off the bus and ensur[ed] that they behaved properly on the bus."  *Id.* ¶ 5.  Out of approximately 13 bus monitors, four (including plaintiff) were deaf.  *Id.*

Wendy Armstrong, who "is hard of hearing (not completely deaf)," became plaintiff's supervisor in early 2008.  *Id.* ¶ 8.  In this capacity, Ms. Armstrong "was responsible for [p]laintiff's performance evaluations."  *Id.*  Although plaintiff's former supervisor provided an ASL interpreter for staff meetings, *id.* ¶ 7, Ms. Armstrong discontinued the practice, *id.* ¶ 9.  She "is not fluent in ASL," yet Ms. Armstrong did "her own interpreting for deaf staff members."  *Id.*  Plaintiff found it "nearly impossible . . . to understand" her.  *Id.*  When "[p]laintiff and the other deaf bus monitors requested ASL interpreters for group meetings in 2008 and 2009, [Ms.] Armstrong repeatedly denied" the requests.  *Id.* ¶ 10.

According to plaintiff, Ms. Armstrong "made derogatory statements about [her] national origin, often with co-workers and students present."  *Id.* ¶ 12.  For example, Ms. Armstrong allegedly asked plaintiff, "'Why are you here?  We don't understand foreigners' and 'Why are you foreigners trying to be promoted above Americans?'"  *Id.* ¶ 12.a.  She allegedly "harassed" plaintiff in August 2009 when she made a comment about "a traditional Jamaican dish [plaintiff was eating] for lunch."  *Id.* ¶ 12.b.  Also in August 2009, on a "bus full of students," Ms. Armstrong referred to plaintiff and asked the students in sign language, "'do you understand her Jamaican sign language?'"  *Id.* ¶ 12.c.  "Plaintiff interpreted [these] remarks as insulting and humiliating to her Jamaican national origin."  *Id.*

2

In June 2009, "another bus monitor complained to Gallaudet's human resources office about [Ms.] Armstrong's discriminatory treatment and unwillingness to provide an ASL interpreter." *Id*. ¶ 13.  Plaintiff was interviewed in the subsequent investigation by Sharrell McCaskill, *id*. ¶ 14, who is identified as Gallaudet's Director of Equal Opportunity Programs and Title IX Coordinator, Mem. of P. & A. in Support of Def. Gallaudet Univ.'s Rule 12(b)(6) Mot. for Partial Dismissal of Pl.'s Am. Compl. [ECF No. 17-1] ("Def.'s Mem.") at 2.  According to plaintiff, "[a] few days after the interview, [Ms.] Armstrong informed [p]laintiff that [Ms.] McCaskill had told her what [p]laintiff had said as a witness," at which time [Ms.] Armstrong threatened to fire plaintiff and "block her from future employment[.]"  Am. Compl. ¶ 15.

Plaintiff was called to attend a meeting on September 23, 2009.  *Id*. ¶ 16.  In attendance were Ms. Armstrong, Gallaudet's Transportation Manager, Bus Driver Supervisor, and an ASL interpreter.  *Id*. ¶ 17.  Ms. Armstrong presented plaintiff "a letter informing her that she was terminated" for the following reasons:

> A. [Plaintiff] was warned that she could not wear Capri pants to work, but she wore them anyway on Friday, September 18.
> B. On September 18, when Armstrong tried to talk to [p]laintiff, [p]laintiff was insubordinate and had a "loud outburst."

*Id*.

Plaintiff brings this action under the Americans with Disabilities Act ("ADA"), *see* 42 U.S.C. § 12101 *et seq.*, Title VII of the Civil Rights Act of 1964 ("Title VII"), *see* 42 U.S.C. § 2000e *et seq.*, and the District of Columbia Human Rights Act ("DCHRA"), *see* D.C. Code § 2-1402.01 *et seq*.  She alleges that Gallaudet's refusal to provide a reasonable accommodation in the form of an interpreter at staff meetings

3

violated the ADA (Count I) and the DCHRA (Count IV), *see* Am. Compl. ¶¶ 23-25, 43, and that Gallaudet subjected her to a hostile work environment in violation of Title VII (Count III) and the DCHRA (Count IV) on the basis of her national origin, *see id*. ¶¶ 36, 44.  In addition, plaintiff alleges that Gallaudet retaliated against her for having participated in protected activity, that is, the investigation following another employee's discrimination claim, in violation of the ADA (Count II) and the DCHRA (Count V).  *See id*. ¶¶ 30-31, 46.  She demands a declaratory judgment, back wages, compensation for emotional distress, costs and attorney's fees.  *See id*. at 10.

## II. DISCUSSION

### *A.  Plaintiff's Retaliation Claims*

Gallaudet moves to dismiss Counts II and V of the First Amended Complaint. *See generally* Def.'s Mem. at 4-7.  According to Gallaudet, plaintiff's EEOC Charge neither mentions her "participation in an EEO investigation, nor . . . suggest[s] that the adverse employment actions of which [she] complained . . . in her EEOC Charge were causally connected to her participation in the investigation." *Id*. at 4.  Because the allegations set forth in the pleading are "not reasonably like or related to the allegations contained in her administrative charge complaining of discrimination to the Equal Employment Opportunity Commission ('the EEOC')," *id*., Gallaudet submits that plaintiff's retaliation claims under the ADA and the DCHRA should be dismissed.

"It is well established that before bringing suit in federal court, ADA plaintiffs, like those under Title VII, must exhaust their administrative remedies by filing an EEOC charge and giving that agency a chance to act on it." *Elzeneiny v. District of*

4

*Columbia*, No. 09-889, 2015 WL 4975277, at *11 (D.D.C. Aug. 19, 2015) (citations, brackets and internal quotation marks omitted); *see* 42 U.S.C. § 12117 (incorporating procedural provisions of Title VII for cases under the ADA). "At a minimum, the Title VII claims must arise from 'the administrative investigation that can reasonably be expected to follow the charge of discrimination.'" *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995) (citing *Chisholm v. U.S. Postal Serv.*, 665 F.2d 482, 491 (4th Cir. 1981)). A similar approach pertains to a claim of retaliation under the DCHRA. *See Ivey v. District of Columbia*, 949 A.2d 607, 615 (D.C. 2008).

Neither party includes a copy of plaintiff's EEOC Charge in the record of this case, however. In this circumstance the Court cannot know the content or scope of the EEOC charge, and thus is unable to determine whether the allegations of the First Amended Complaint fall within the "scope to claims that are like or reasonably related to the allegations of the charge and growing out of such allegations." *Park*, 71 F.3d at 907 (citation and internal quotation marks omitted). Gallaudet's motion to dismiss plaintiff's retaliation claims will be denied without prejudice.

### B.  *Plaintiff's Hostile Work Environment Claim*

Gallaudet moves to dismiss plaintiff's hostile work environment claim based on her national origin on the ground that "[t]he facts alleged in Counts III and IV . . . do not support" the claim. Def.'s Mem. at 7.

A plaintiff may prevail on a hostile work environment claim if she shows "that [her] employer subjected [her] to discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of [her] employment and create

5

an abusive working environment." *Baloch v. Kempthorne*, 550 F.3d 1191, 1201 (D.C. Cir. 2008) (internal quotation marks and citations omitted).  The Court determines whether a hostile work environment exists by considering "the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance." *Id.* (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998)).  "The constituent acts must be 'adequately linked' such that they form 'a coherent hostile environment claim.'"  *Baird v. Gotbaum*, 792 F.3d 166, 168-69 (D.C. Cir. 2015) (quoting *Baird v. Gotbaum*, 662 F.3d 1246, 1251 (D.C. Cir. 2011)).  The standard is an objective one.  *Id.* (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).  Although a plaintiff need not plead all elements of a prima facie case in her complaint, *Ali v. District of Columbia Gov't*, 697 F. Supp. 2d 88, 92 (D.D.C. 2010), still she must plead facts that can support her hostile work environment claim, *see Rattigan v. Gonzales*, 503 F. Supp. 2d 56, 78 (D.D.C. 2007) (citing *Sparrow v. United Air Lines*, 216 F.3d 1111, 1114 (D.C. Cir. 2000)).

Plaintiff bases her hostile work environment claims on the actions and statements of Ms. Armstrong.  *See* Am. Compl. ¶¶ 36, 44.  She alleges that Ms. Armstrong "repeatedly humiliated" her "by making derogatory remarks about her national origin," *id*. ¶ 36, and she described three incidents occurring between 2008 and 2009, *see id*. ¶ 12, to support her claim.  The Court has reviewed the parties' submissions and concurs with Gallaudet's assessment that plaintiff fails to state a hostile work environment claim under either the ADA or the DCHRA.

A hostile work environment claim is "based on the cumulative effect of individual acts," *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002), and it is viable only if the conduct of which a plaintiff complains is so "extreme to amount to a change in the terms and conditions of employment,'" *George v. Leavitt*, 407 F.3d 405, 416 (D.C. Cir. 2005) (quoting *Faragher*, 524 U.S. at 788). Courts must adhere to these standards in order that "Title VII does not become a general civility code" that involves courts in policing "the ordinary tribulations of the workplace." *Faragher*, 524 U.S. at 788 (citation and internal quotation marks omitted).

The "objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." *Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 81 (1998) (internal quotations and citations omitted). Here, plaintiff's allegations that Ms. Armstrong made derogatory comments on "multiple occasions" over a two-year time span, Am. Compl. ¶ 12.a., made one comment pertaining to a traditional Jamaican dish, *id*. ¶ 12.b., and posed one question to children on a school bus interpreted by plaintiff as "insulting and humiliating to her Jamaican national origin," *id*. ¶ 12.c., along with a vague assertion that Ms. Armstrong "repeatedly humiliated" her, *id*. ¶ 36, if proven, do not meet this objective standard. *See, e.g., Gray v. Foxx*, No. 14-5306, 2015 WL 9309101, at *5 (D.C. Cir. Dec. 18, 2015) (per curiam) (affirming district court's entry of summary judgment for employer where allegations that supervisor "yelled [at] and belittled" unconnected to plaintiff's protected status and without evidence of frequency and specificity); *Magowan v. Lowery*, No. 15-917, 2016 WL 778351, at *19 (D.D.C. Feb. 29, 2016) (concluding that

allegations of "occasional name-calling, rude emails, lost tempers and workplace disagreements" were insufficient support for hostile work environment claim).

Even accepting the allegations of the First Amended Complaint as true for purposes of this motion, *see, e.g., Browning v. Clinton*, 292 F.3d 235, 242 (D.C .Cir. 2002), plaintiff does not demonstrate that her workplace had become so "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment" for her. *Oncale*, 523 U.S. at 78 (quoting *Harris*, 510 U.S. at 21). Gallaudet's motion to dismiss plaintiff's hostile work environment claims under the ADA and the DCHRA will be granted.

### C. Plaintiff's Claim of Termination Based on National Origin

Gallaudet argues that Count III does not set forth facts "to link [p]laintiff's membership in a protected class to her termination," Def.'s Mem. at 9, and therefore her "claim for discrimination under Title VII should be dismissed," *id*. at 10. Plaintiff opposes defendant's motion, noting that Ms. "Armstrong [was] the very supervisor who made numerous anti-Jamaican remarks [and] made or had significant influence on the decision to terminate [her] employment." Pl.'s Opp'n at 9.

A plaintiff need only provide a "short and plain statement of [her] claim showing that [she is] entitled to relief," Fed. R. Civ. P. 8(a)(2), that "give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus,* 551 U.S. 89, 93 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal quotation marks omitted). In this case, the plaintiff's

discrimination claim calls for allegations that she is a member of a protected class who suffered an adverse employment action under circumstances giving rise to an inference of discrimination. *See, e.g., Massaquoi v. District of Columbia*, 81 F. Supp. 3d 44, 49 (D.D.C. 2015) (quoting *Rodriguez v. Donovan*, 922 F. Supp. 2d 11, 17 (D.D.C. 2013)). She need not "plead every fact necessary to establish a *prima facie* case to survive a motion to dismiss," however. *Jones v. Air Line Pilots Ass'n, Int'l*, 642 F.3d 1100, 1104 (D.C. Cir. 2011) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002)). Still she must "plead sufficient facts to show a plausible entitlement to relief," *Rodriguez*, 922 F. Supp. 2d at 17, and plaintiff does so in this case. The Court concurs with plaintiff that, "[a]t this early stage," her complaint "sufficiently states a claim for discriminatory termination" Pl.'s Opp'n at 9, and the claim thus survives defendant's partial motion to dismiss.

It is hereby

ORDERED that the stay entered pursuant to the Court's September 1, 2015 Minute Order is LIFTED; and it is

FURTHER ORDERED that Defendant Gallaudet University's Rule 12(b)(6) Motion for Partial Dismissal of Plaintiff's Amended Complaint [ECF No. 17] is GRANTED IN PART, and plaintiff's hostile work environment claims under the ADA and the DCHRA are DISMISSED. In all other respects, defendant's motion is DENIED WITHOUT PREJUDICE.

SO ORDERED.

*Tanya S. Chutkan*

Date: March 14, 2016      TANYA S. CHUTKAN
United States District Judge